DEMPSEY v DEMPSEY

Docket No. 44759. Submitted November 8, 1979, at Grand Rapids.— Decided March 18, 1980. Leave to appeal applied for.

Shirley A. Dempsey brought a divorce action against John J. Dempsey in Leelanau Circuit Court. In her complaint, the plaintiff sought custody of the parties' three minor children. Defendant was initially awarded temporary custody of the children. After a contested trial, William R. Brown, J., awarded custody of the children to the defendant. The plaintiff appeals by leave granted, asserting four grounds for reversal of the award of custody to the defendant: (1) the failure of the trial court to interview the children as to their preferences, (2) the trial court's awareness of the recommendation in the report of the friend of the court, even though there was no agreement by the parties to the admission of the report, (3) the trial court's consideration of the capacity of the respective parties to provide for the material needs of the children as constituting a denial of due process and equal protection of the law, and (4) that the custody determination was against the great weight of the evidence. *Held:*

1. The Child Custody Act requires a court to use the standard of the best interests of the children in determining the parent to whom custody should be awarded. One of the factors which must be considered is the reasonable preference of the children. However, the trial judge has the discretion to determine whether the children are of sufficient age to express a preference. In the instant case it would have been better for the trial judge to state on the record his reason or reasons for not speaking with the children.

2. A report of the friend of the court is not generally

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 358.
  5 Am Jur 2d, Appeal and Error §§ 703, 822.
[2, 5, 6] 24 Am Jur 2d, Divorce and Separation §§ 783-790.
  Modern status of maternal preference rule or presumption. 70 ALR3d 262.
[3] 24 Am Jur 2d, Divorce and Separation § 784.
  Child's wishes as factor in awarding custody. 4 ALR3d 1396.
[4] 4 Am Jur 2d, Amicus Curiae § 4.

admissible as evidence except by agreement of the parties. In this case there was no agreement to admit the report of the friend of the court, and it did not become a part of the record. However, the trial judge did indicate that he was aware of the report and recommendation. It was error for the court to weigh, in making his custody determination, any evidence not made part of the record, including the report of the friend of the court.

3. Another factor to be considered in determining the best interests of a child is the capacity and disposition of each parent to provide for the material needs of the child. A determination of the economic capacity of the respective parents has a rational relationship to the best interests of the child. Such a determination is neither a denial of due process nor of equal protection of the law.

4. The trial judge evaluated the relevant economic circumstances of the parties in such a way as almost to preclude the plaintiff from gaining custody. Pre-eminent and decisive reliance was placed upon the defendant's superior economic position. In the instant case, the evaluation of the factors to be used to determine the best interest of the child placed undue reliance upon economic circumstances in relation to other factors. In addition, the trial court's support order, which suggested that the plaintiff provide regular day care for the children while the defendant worked, further exacerbated the plaintiff's economic circumstances. The undue weight accorded this factor was a palpable abuse of the trial court's discretion. Upon a review of the record the award of custody of the minor children to the defendant was clearly erroneous.

Reversed and remanded.

1. PARENT AND CHILD — CHILD CUSTODY — DE NOVO REVIEW — STATUTES.

Appellate review of an order of child custody is *de novo*, but special consideration should be given to the trial court's findings of fact (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY — BEST INTERESTS OF CHILD — STATUTES.

The Child Custody Act requires a court to use the standard of the best interest of a child in determining the parent to whom custody should be awarded; in reaching its determination the trial court must make specific findings of fact on each of the factors enumerated in the Child Custody Act (MCL 722.25; MSA 25.312[5]).

3. Parent and Child — Child Custody — Best Interests of Child — Preference of Child — Statutes.

One of the factors a trial court must consider in determining the best interests of a child in deciding the parent to whom custody of a child should be awarded is "the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference"; the trial court does have the discretion to determine whether the child is of sufficient age to express a preference (MCL 722.23; MSA 25.312[3]).

4. Divorce — Friend of Court Report — Evidence — Admissibility of Evidence — Child Custody.

A report of the friend of the court is not generally admissible as evidence, except by agreement of the parties, in a proceeding to determine which parent in a divorce action is to be awarded custody of the parties' minor children.

5. Divorce — Child Custody — Best Interests of Child — Economic Circumstances — Statutes.

Among the ten factors to be considered in determining the best interests of a child in making a decision as to which parent in a divorce action should be awarded custody of the child is the capacity and disposition of each parent to provide the child with food, clothing, medical care or other remedial care recognized under the laws of this state in lieu of medical care and other material needs; in a child custody dispute the economic capacity of the parties has a rational relationship to the best interests of the child; this factor reflects the economic differences of the parties, not gender differences.

6. Divorce — Child Custody — Best Interests of Child — Economic Circumstances — Abuse of Discretion.

A trial court's evaluation, in a custody matter related to a divorce proceeding, of the ten statutory factors for determining the best interest of the parties' minor children which places undue reliance upon economic circumstances in relation to the other factors to the extent that the parent with the more modest economic circumstances is excluded from consideration as the custodial parent is an abuse of discretion.

*Troester, Picard, MacNeil, Learman & DeWit,* for plaintiff.

*Zerafa & Zerafa, P.C.* (by *Dennis M. Swain*), for defendant.

Before: V. J. BRENNAN, P.J., and BEASLEY and G. E. BOWLES,* JJ.

G. E. BOWLES, J. On March 14, 1979, following a contested trial, custody of the parties' three minor children was awarded to defendant father. Plaintiff mother by leave of the Court presses her delayed appeal.

On July 19, 1977, plaintiff filed a complaint for divorce and sought custody of her three children. On August 29, 1978, defendant was awarded temporary custody. Plaintiff continued to care for the children. On October 30, 1978, the final report of the friend of the court recommending that custody of the children be awarded to defendant was filed. Plaintiff objected to the report of the friend of the court. Permanent custody of the children was awarded to defendant and judgment entered following the court's March 27, 1979, decision.

Proofs at trial showed that plaintiff sought divorce on the basis that defendant did not spend any time with her or the family but, rather, bowled and went on snowmobile trips without them in his leisure time. Defendant also worked nights and frequently was not home in time to eat dinner with the family. Plaintiff did all the cooking, sewing, and laundry for the children, bought their clothes, took them to the doctor, and attended parent-teacher conferences. She testified that defendant did not share these responsibilities. Plaintiff also testified that she took the children to church and Sunday school and that defendant did not attend. To his credit, however, she also stated that defendant was a hard-working man, spent the money he earned on the family, and that he had been a good father. Additionally, there was testi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

mony from neighbors that defendant did things with the children on weekends and that when he was home he acted like a good father.

At the time of trial the older children were nine and seven and the youngest child, Eric, was three. Eric suffered from epilepsy and had seizures. His epilepsy has been relieved by new medication. Plaintiff assumed for three years the care of Eric with relation to his epilepsy, working with the Traverse Bay Intermediate School Special Education Program (TBA), receiving training on home therapy; defendant did not participate. Defendant had suggested an abortion when plaintiff mother was carrying Eric. However, after Eric's birth, defendant showed an interest in him. Defendant testified as to his care of Eric, playing with him and reading him stories. Eric's father also took the boy on errands with him. As far as defendant's failure to go to the hospital with Eric when the boy was suffering from seizures, defendant testified that he was in the middle of work, couldn't get away, and did not realize the seriousness of the situation.

The testimony on behalf of plaintiff by neighbors and staff members of TBA showed that she was coping well with Eric's seizures and his special education home program. At the time of trial Eric was attending school two days a week while the home program of therapy continued. It was shown that the program for Eric could continue with someone other than plaintiff supervising. However, such a change would require a lot of extra work. According to testimony, if defendant had custody it would take some time to train him to be able to continue with Eric's program.

After the filing of the divorce complaint the parties continued to reside together in the marital

home. Concerning household duties, defendant testified that he prepared breakfast for the children, made their lunches for school, and provided groceries in the period immediately prior to trial. If awarded custody defendant testified that he had arranged for the two older children to stay with a neighbor after school. He would pick them up after work at approximately 5 p.m. Defendant also planned to take the children to school in the mornings. A sister-in-law would take care of Eric during the week and, if she were unavailable, three other women had agreed to help with the youngster. Defendant could leave work, if necessary, during the day and thought he could follow the TBA instructions. At the time of trial plaintiff had not yet made arrangements for a place to live after the divorce.

In regard to economic circumstances, plaintiff worked part-time with an income of $1,000 to $3,000 in 1978. During 1978 defendant earned some $14,000 to $15,000.

At trial defendant sought to introduce the report and recommendations of the friend of the court. The trial judge, following objection by plaintiff's counsel, declined to receive the report. However, the record reveals the following comment made by the judge:

"The Court will sustain the objection. It is an unnecessary inquiry, since the Court is aware of the recommendation."

After granting custody to defendant the court reserved judgment as to whether plaintiff should pay any support. The court suggested that she could provide regular day care for the children instead.

Plaintiff asserts four grounds for reversal of the custody award on appeal: (1) the failure of the trial court to interview the children, (2) the court's awareness of the recommendation contained in the friend of the court's report, (3) the court's consideration of the capacity of the parties to provide for the material needs of the children as constituting a denial of due process and equal protection of the law, and (4) that the custody determination was against the great weight of the evidence.

Pursuant to MCL 722.28; MSA 25.312(8), of the Child Custody Act, appellate review of an order of child custody is limited. This provision provides in relevant part:

> "To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or clear legal error on a major issue."

Review is *de novo,* but special consideration is given to the trial court's findings of fact. *Eigner v Eigner,* 79 Mich App 189; 261 NW2d 254 (1977).

## I

The Child Custody Act requires the court to use the standard of the best interests of the child in determining the parent to whom custody should be awarded. MCL 722.25; MSA 25.312(5). In reaching its determination the trial court must make specific findings of fact on each of the factors enumerated in the Child Custody Act. *Barnes v Barnes,* 77 Mich App 112; 258 NW2d 65 (1977). One of the factors the trial court must consider is "the reasonable preference of the child, if the court deems

the child to be of sufficient age to express a preference". MCL 722.23(i); MSA 25.312[3][i]. The lower court's opinion stated that, "[n]one of the children were present at the time of hearing, and the parties apparently concur that they should not be requested to express a preference".

The interview of a minor child is a difficult matter requiring tact and sensitivity, but it is often helpful in a fair adjudication of the child's best interests. The court does have the discretion to determine whether the child is of sufficient age to express a preference. In *Roudabush v Roudabush,* 62 Mich App 391, 394; 233 NW2d 596 (1975), this Court held that it is not mandatory for the trial judge to consider the preference of the child. That Court also declared, however, that sound practice dictated that the · child be interviewed when there are significant environmental differences between the parents. In *Lewis v Lewis,* 73 Mich App 563, 566; 252 NW2d 237 (1977), one of the parties requested that the court interview the children. The court refused without explaining why it declined to interview the children. This was found to be reversible error.

In this case the better practice, in order to dispel all doubts concerning the custody decision, was for the judge to state on the record the reason or reasons for not speaking with the children. *Stevens v Stevens,* 86 Mich App 258; 273 NW2d 490 (1978), *In re Custody of James B,* 66 Mich App 133; 238 NW2d 550 (1975). However, our ultimate disposition of this case makes it unnecessary to remand on this issue.

## II

The law has long been settled that the report of the friend of the court is not generally admissible

as evidence except by agreement of the parties. *Sweet v Sweet,* 329 Mich 251; 45 NW2d 58 (1950). In the case at bar, there was no agreement to admit the report of the friend of the court, and it did not become a part of the record. However, the trial judge did indicate that he was aware of the report and recommendation. The reception and consideration of the friend of the court report in a custody case is favored. Nonetheless, on the facts of this case, the trial judge should not have considered the report. It was error for the court to weigh, in making his custody determination, any evidence not made part of the record, including the friend of the court report. The trial judge's admitted knowledge of the contents of this report might well have had a persuasive effect in the final determination of custody. For this reason alone we would have to vacate the trial court's custody order.

## III

Among the ten factors to be considered in determining the best interests of the child is:

"The capacity and disposition of competing parties to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs." MCL 722.23(c); MSA 25.312(3)(c).

Plaintiff urges that this provision of the Child Custody Act is unconstitutional as violative of her rights to equal protection and due process of law. It is asserted that MCL 722.23(c); MSA 25.312(3)(c), differentiates between parties on the basis of economic condition, thereby favoring fathers over

mothers because of the traditional roles of men and women in our society.

In *Reed v Reed,* 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), which involved equal protection and discrimination based on gender, Mr. Chief Justice Burger spoke for a unanimous Court:

> "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " (Citation omitted.)

This has been called the rational basis test.

In a child custody dispute the economic capacity of the parties has a rational relationship to the best interests of the child. The central and decisive point is that in contemplating what is best for a child the economic well-being of the child must be considered and hence the relative circumstances of the parties. There are economic differences, not gender differences, reflected in MCL 722.23(c); MSA 25.312(3)(c). See *General Electric Co v Gilbert,* 429 US 125; 97 S Ct 401; 50 L Ed 2d 343 (1976). If a differentiation is based on a factor other than sex there is no sex-based denial of equal protection or due process of law unless it can be found to be a mere pretext to effect an invidious discrimination. A careful reading of the ten statutory criteria shows that, as a whole, MCL 722.23; MSA 25.312(3), is not weighted in favor of either sex. While it's true that due to the traditional roles of men as breadwinners and women as homemakers, some individual factors favor fathers, certain other factors tend to favor mothers in custody disputes.

As to economic discrimination, the rational basis test was applied by the Supreme Court in *United*

*States v Kras,* 409 US 434; 93 S Ct 631; 34 L Ed 2d 626 (1973). In *Kras,* it was held that a $50 fee for filing a bankruptcy petition is not unconstitutionally discriminatory against indigents. On the other hand, such a fee was held to violate equal protection as regards filing fees in divorce actions. *Boddie v Connecticut,* 401 US 371; 91 S Ct 780; 28 L Ed 2d 113 (1971).

Unlike the problem in *Boddie,* plaintiff is not excluded from exercising her right to seek and win custody on the basis of her marginal economic situation. The record in the case at bar shows the plaintiff had a relatively low rating on economic circumstance. However, such a rating is not conclusive in making a determination concerning custody. There is neither a denial of due process nor of equal protection of the law fostered by the Child Custody Act. The legislative determination that relative economic circumstances be weighed as one of the ten criteria in determining the best interests of the child has a rational basis. It cannot be overemphasized that in a child custody dispute the rights of the children are paramount.

## IV

We now turn to a consideration of whether the trial court's grant of custody to defendant was against the great weight of the evidence.

In evaluating the statutory criteria of MCL 722.23; MSA 25.312(3), the trial court found the parties equal on seven of the ten factors. As to the other three, the court found:

"Defendant has a substantially greater capacity and disposition to provide the children with food, clothing, medical care and other material needs. He has worked as a mechanic for a substantial period of time and has a

consistent record of regular earnings and of providing those earnings for the benefit of the family. Plaintiff's earnings have been solely from part time employment since the birth of the first child, and she has not obtained a rate of pay nearly comparable to that of Defendant. Defendant has indicated plans to continue his present employment following the divorce. There was no evidence as to Plaintiff's future plans for employment. Only slight preference is accorded to Defendant based on this factor since the difference in earning capacity can be adjusted by the Court's requirement of support by a noncustodial parent.

The factor of stability indicates a preference that Defendant be the custodial parent. The children have lived in the same community and the same home since 1974. Defendant has a greater interest and the capacity to continue to maintain that home. Plaintiff has indicated an intention to find housing but has no fixed plans.

\* \* \*

"The Court also considers as relevant the motivation for divorce. For many years Plaintiff has been the parent with most direct and frequent contact with the children in their day to day supervision, and Defendant has assumed the wage earner role and has been out of the home for extensive hours because of his employment. Plaintiff is the one principally interested in the divorce. She has developed personal interests which take her from the home. Defendant has responded to the change of circumstances since the filing of the Complaint by working shorter hours, being available for supervision of children through the breakfast and preparing their lunches. Defendant has further demonstrated the greater ability to change his personal routine and to develop constructive plans for care of the children if accorded custody."

As to the property disposition, the court awarded defendant the marital home, two of the three cars, first pick of the two snowmobiles, checking and savings bank accounts, a garden

tractor, and most of the household furnishings and fixtures. Plaintiff received five acres of real estate adjacent to the home free of debt and $5,000 to be paid over a five-year period. She received no alimony.

The trial judge evaluated the relevant economic circumstances of the parties in such a way as almost to preclude plaintiff from gaining custody. Pre-eminent and decisive reliance was placed upon defendant's superior economic position. True, the employment of the plaintiff had been sporadic and part-time, but she had had three pregnancies, the responsibility of caring for the children, and the youngest child, not three years old, was an epileptic who required special care. This care was provided by plaintiff. Indeed, the trial judge in reference to stability of environment, MCL 722.23(d); MSA 25.312(3)(d), relied again on the economic factor in part:

"Defendant has a greater interest and the capacity to continue to maintain that home."

Further, the property disposition was such that the plaintiff probably could never gain custody in the future, keeping in view her very limited economic capacity and the great emphasis which the court placed on relative economic circumstances.

The court further ordered in regard to the plaintiff's role in supporting the children:

"To as nearly as possible parallel the prior conditions, the Court will reserve any requirement for payment of support with the suggestion that Plaintiff might make a contribution by services, providing regular day care for the children and thus eliminating the cost of outside babysitters."

The trial court's support order exacerbated the economic problem by relegating plaintiff to the role of a permanent babysitter, limiting even further her employment options and practically ensuring the perpetuation of her inferior economic position.

The Child Custody Act wisely addresses the best interests of the child and further requires that in a custody determination the ten criteria or factors be evaluated with specific findings by the trial court. This is not to suggest that the resolution of a custody case lies in a box score evaluation; that that party who is accorded the winner on six factors should necessarily "win".

A child custody determination is much more difficult and subtle than an ·arithmetical computation of factors. It is one of the most demanding undertakings of a trial judge, one in which he must not only listen to what is said to him and observe all that happens before him, but a task requiring him to discern and feel the climate and chemistry of the relationships between children and parents. This is an inquiry in which the court hopes to hear not only the words but the music of the various relationships.

Here, the evaluation of factors placed undue reliance upon economic circumstances in relation to other factors. Economic matters are of considerable consequence in childrearing, but not preponderantly more important than other factors. Indeed, it can be argued that economic circumstances never should be conclusively determinative. The reason is plain. In most cases the mother will be disadvantaged, although with changing life patterns this is not always so. It is not merely a question of prejudicial effect upon mothers; the danger in placing undue reliance on economic

circumstances is its potential prejudicial effect upon the child's best interests. The party with the more modest economic resources should not be excluded from equal consideration as the custodial parent. If the parties are substantially different as to economic circumstances, the court has ample power through its orders, if it be in the best interests of the child or children, to equalize those circumstances. The assessment of the statutory criteria or factors as applied to the mother and father in this case was a palpable abuse of discretion.

Upon review of the record we conclude that the award of custody of the minor children to defendant was clearly erroneous. Consequently, the trial court is reversed. Since the disposition of the property of the parties was related intimately to the child custody determination, the case must be remanded to the trial court for a reassessment of child support, alimony, and property disposition.

Reversed and remanded.